Virginia **PIZZUTO,** Administratrix of the Estate of her husband Thomas Pizzuto, and on her own behalf; Tommy Pizzuto, by his mother and natural guardian Virginia Pizzuto; Carol Pizzuto; Rosario Pizzuto; Joseph Pizzuto; Russell Pizzuto; and Anthony Pizzuto, Plaintiffs,

v.

**COUNTY OF NASSAU,**
et al., Defendants.

No. CV 00–0148(NGG).

United States District Court,
E.D. New York.

Jan. 16, 2003.

Peter J. Neufeld, Cochran Neufeld & Scheck, LLP, New York, NY, for Plaintiffs.

Paul F. Millus, Snitow & Cunningham, LLP, Snitow, Kanfer, Holtzer & Millus, New York, NY, Ernest Peace, Alan J. Reardon, Carole A. Burns & Associates, Peter Monaghan, Bartlett, McDonough, Monaghan & Berk, Thomas A. Toscano, Thomas Toscano, P.C., Mineola, NY, for Defendants.

## MEMORANDUM AND ORDER

GARAUFIS, District Judge.

Plaintiffs bring this action under 42 U.S.C. § 1983, alleging that Defendants are liable under federal and state law for the murder of Thomas Pizzuto by corrections officers of the Nassau County Correctional Center ("NCCC"). Now before the court, Plaintiff Virginia Pizzuto, the decedent's surviving wife, moves for partial summary judgment against defendants Edward Velazquez, Patrick Regnier, Ivano Bavaro, Joseph Bergen, Gary Pincus and Nassau County.

For the reasons set forth below, Plaintiff's motion for summary judgment is granted with respect to defendants Velazquez, Regnier, Bavaro, Bergen and Nassau County. Plaintiff's motion for summary judgment against defendant Pincus is granted in part and denied in part.

## FACTUAL BACKGROUND

The facts underlying Plaintiff's claims are set out at length in this court's decision of November 19, 2002. Following is a brief recitation of the facts relevant to Plaintiff's motion for summary judgment. All facts are undisputed unless otherwise noted.

On January 7, 1999, Thomas Pizzuto, age 38, was sentenced to ninety days in jail on the misdemeanor charge of driving under the influence of methadone. (Second Am. Compl., ¶ 16.) Later that day, Pizzuto was incarcerated at the NCCC and assigned to a one-person cell in the NCCC's Observation Tier. Pizzuto's assignment to this unit was based on his status as an inmate receiving methadone treatment. (Plaintiff's Rule 56.1 Statement ("Pl. Stmt"), ¶ 1.)

On January 8, his first full day in jail, Pizzuto began yelling from the inmate shower area that he needed his court-ordered methadone treatment. (Id.) Defendant Edward Velazquez, a guard assigned to Pizzuto's cell block, told Pizzuto to "shut the fuck up" and to return to his cell. See U.S. v. Velazquez, 246 F.3d 204, 206 (2d Cir.2001). Pizzuto refused, responding: "Fuck you, you are not going to tell me what to do." Id. In response, Velazquez and another guard, Ivano Bavaro, ordered all Observation Tier inmates to "lock in" to their cells. (Pl.Stmt, ¶ 2.) At this time, Pizzuto obeyed the order and entered his cell. (Id.) After ordering the lock in, defendants Velazquez, Bavaro, and Patrick Regnier consulted with defendant Gary Pincus, the supervising officer on duty. (Id.) Velazquez reported to Pincus that Pizzuto had not immediately heeded an order to return to his cell. Pincus then instructed Velazquez, Regnier and Bavaro to confront Pizzuto and "quiet him down." (Id.)

The three corrections officers donned surgical gloves, opened the security gate and entered the inmate walkway, proceeding toward Pizzuto's cell with the admitted intention of using "unreasonable force," if necessary, to quiet him down. (Id.) Velazquez and Regnier stated in their plea allocutions that they had initially anticipated yelling at Pizzuto through the bars of his cell. (Id., Ex. C.) However, as soon as the officers reached Pizzuto's cell, Pincus opened the cell door, prompting Velazquez and Regnier to enter. Bavaro remained outside standing guard. (Id. ¶ 3.) In his plea allocution, Velazquez described the events that followed:

> Mr. Pizzuto was a large man of approximately 270 pounds, your Honor. I shouted at him to shut his mouth. However, he continued to scream that he wanted his methadone and wanted to go to medical. Without provocation, your Honor, I pushed him back to his bed and slapped him with an open hand and punched him. At that point, Officer Regnier and myself struggled with Mr. Pizzuto which resulted in the three of us landing on the floor fo the cell. During this entire time I was yelling at Mr. Pizzuto to keep quiet and stop resisting and disrupting the tier.

(Id., Ex. C.)

The officers viciously beat Pizzuto for approximately one minute. Velazquez, 246 F.3d at 208. Velazquez punched Pizzuto in the eye with a closed fist, pushed him into a prone position, and continued punching him. Id. At the same time, Regnier punched Pizzuto in the lower part of his back and kneed him on his lower back and legs. Id. Pizzuto never fought back. Id. According to his deposition testimony, defendant Pincus heard thuds, banging, crying and moaning from Pizzuto's cell, and felt vibrations from the walls. (Pl.Stmt, ¶ 10.) Pincus testified that he believed the

officers were using excessive force against Pizzuto, but he nonetheless failed to intercede. (*Id.*) Once the officers had beaten Pizzuto into submission, they left him lying in his cell with extensive visible injuries, including a swollen and blackened left eye, a swollen left cheek, abrasions to his left cheek, bruises and contusions on his chest, shoulder, torso and back, and a contusion on his leg. (*Id.* ¶ 12.) In addition, it was later discovered that his spleen was lacerated by the force of the punches or kicks to his torso. (*Id.* ¶ 13.) The officers reported back to Pincus that no "injury report" or "use of force report" was needed. (*Id.* ¶ 11.) As a result, Pizzuto received no immediate medical care.

When defendant Joseph Bergen replaced Pincus as the on-duty supervisor over an hour later, Pincus informed Bergen that "[m]y guys smacked D–3 around a little." (*Id.* ¶ 11.) Bergen replied that he would prepare an accident report claiming that Pizzuto had slipped and fallen in the shower. (Second Am. Compl., ¶ 33.) Shortly thereafter, Bergen sent just such an accident report to a medical technician who escorted Pizzuto to the Medical Unit. (*Id.* ¶¶ 33, 34.) The only treatment Pizzuto received, despite his extensive visible injuries, was a bag of ice. (Pl.Stmt, ¶ 26.) Pizzuto was returned to his cell later that evening. (Second Am. Compl., ¶ 34.)

Three days later, on January 11th, Thomas Pizzuto collapsed in his cell and was subsequently taken to the Nassau County Medical Center ("NCMC"). (*Id.* ¶ 36.) Pizzuto died two days later. (Pl. Stmt, ¶ 27.) The County Deputy Medical Examiner attributed the death to a ruptured spleen and declared his death a homicide. (*Id.*, Ex. T.)

Defendants Velazquez, Regnier, Bavaro, Bergen and Pincus were all indicted in the Eastern District of New York for federal civil rights crimes in connection with the death of Thomas Pizzuto. Pincus entered into a cooperation agreement and pled guilty to the lesser charge of misprision of a felony for failing to report Velazquez and Regnier's criminal assault on Pizzuto. (*Id.* ¶ 29.) Bavaro pled guilty to violating 18 U.S.C. § 371 by conspiring to deprive Thomas Pizzuto of his right to be free from cruel and usual punishment resulting in death, and also to witness tampering. (*Id.* ¶ 31.) Defendants Velazquez and Regnier pled guilty to violating 18 U.S.C. §§ 241 and 242 for conspiring to deprive, and in fact, depriving Thomas Pizzuto of his right to be free from cruel and usual punishment resulting in bodily injury and death. (*Id.* ¶ 33.) A jury convicted Bergen for being an accessory after the fact to the conspiracy, and for depriving Pizzuto of his Eighth Amendment right to be free from cruel and unusual punishment, in violation of 18 U.S.C. §§ 241 and 242. (*Id.* ¶ 38.)

Following the convictions of the five corrections officers, Plaintiff filed this civil action for damages on her own behalf and on behalf of Thomas Pizzuto.

## DISCUSSION

### I. Legal Standards

#### A. Summary Judgment

A grant of summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, the court must construe the facts in the light most favorable to the nonmoving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct.

2505, 91 L.Ed.2d 202 (1986), and all reasonable inferences and ambiguities must be resolved against the moving party. *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 83 (2d Cir.2001).

## B. Collateral Estoppel Against The Individual Defendants

Plaintiff moves for summary judgment against defendants Velazquez, Regnier, Bavaro, Pincus and Bergen on the grounds that (1) their convictions collaterally estop them from disputing their acts and the legal consequences thereof, and (2) their own sworn testimony in the criminal proceedings and this civil action eliminates any material question of fact regarding their civil liability. The individual defendants have not replied to Plaintiff's motion for summary judgment.

■ It is well-settled that a criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of a private party in a subsequent civil action with regard to any issue of fact or law (1) that is identical to the issue raised in the prior proceeding; (2) that was actually litigated and decided in the prior proceeding; (3) that the defendants had a full and fair opportunity to litigate; and (4) that needed to be determined in order to reach a valid and final judgment on the merits. *See Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa SA.*, 56 F.3d 359, 368 (2d Cir.1995). A guilty plea qualifies as actual litigation for purposes of collateral estoppel in a subsequent civil trial. *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 43 (2d Cir.1986).

## II. Federal Law Claims

### A. Count I: Conspiracy to Violate Pizzuto's Eighth Amendment Rights

Plaintiff claims that the convictions and sworn deposition testimony of Velazquez,

Regnier, Bavaro and Bergen conclusively establish that Defendants conspired to deprive Pizzuto of his constitutional rights, including the right (1) to be free from the intentional use of unreasonable force; (2) to be free from cruel and unusual punishment as an incarcerated inmate; (3) to have access to and seek redress in the courts; (4) to be free from the delay and denial of medical attention; (5) to be free from unnecessary and wanton infliction of pain; and (6) not to be deprived of life without due process of law.

### 1. Velazquez and Regnier

■ Defendants Velazquez and Regnier each pled guilty to violating 18 U.S.C. § 241 by conspiring to deprive Thomas Pizzuto of his right to be free from cruel and usual punishment under the Eighth Amendment. (Pl.Stmt, ¶ 33.) To determine whether these guilty pleas collaterally estop Defendants from disputing their civil liability under Count I of Plaintiff's complaint, I apply the standards set out in *Central Hudson*, 56 F.3d at 368.

■ The court first considers whether the convictions of Velazquez and Regnier "settled issues of fact and law that are identical to those raised in this case." *See Id.* To establish a civil conspiracy under § 1983, Plaintiff has the burden of showing (1) that two or more people entered into an agreement to violate the victim's civil rights, (2) that the alleged co-conspirators shared in the general conspiratorial objective, and (3) that an overt act was committed in furtherance of the conspiracy that caused injury to him. *See Beck v. Prupis*, 529 U.S. 494, 503, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000) (requiring overt tortious act in addition to traditional elements of a conspiracy); *Old Security Life Ins. Co. v. Continental Ill. Nat. Bank & Trust Co.*, 740 F.2d 1384, 1397 (7th Cir.1984)

("Civil conspiracy is an agreement of two or more people to commit an unlawful act, or to inflict a wrong against another, and an overt act that results in damages."); *see also Hampton v. Hanrahan*, 600 F.2d 600, 620–21 (7th Cir.1979), *rev'd in part on other grounds*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980).

By pleading guilty to violating § 241, Defendants admitted that they (1) intended and in fact did join an agreement between two or more people to violate Thomas Pizzuto's civil rights, and (2) that they knew of the conspiracy and voluntarily participated in it. *U.S. v. Skillman*, 922 F.2d 1370 (9th Cir.1990). Because § 241 does not require an overt act as one of its constituent elements, Defendants' guilty pleas under Count One of the indictment did not necessarily establish that they took an overt act in furtherance of the conspiracy. *See U.S. v. Morado*, 454 F.2d 167 (1972). However, in pleading guilty to violating 18 U.S.C. § 242, Defendants did admit to performing an overt act—the battery of Pizzuto. Thus, when considered together, Defendants' guilty pleas under § 241 and § 242 clearly establish a set of facts that are identical to those necessary for satisfying the elements of a civil conspiracy claim.

*Central Hudson* also requires that Defendants actually litigated the issues underlying their criminal liability and that they had a full and fair opportunity to do so. This requirement was satisfied when Defendants entered their guilty pleas. *See Gelb*, 798 F.2d at 43.

Finally, *Central Hudson* requires that the criminal findings relevant to civil liability were necessary to support a valid and final judgment on the merits of the criminal proceedings. As set out above, Defendants' liability under Counts One and Three of the indictment was only established when the government satisfied elements that are identical to the elements of a civil conspiracy claim.

Accordingly, I find that Velazquez and Regnier's criminal convictions conclusively establish their liability under Count I of Plaintiff's complaint.

*2. Bavaro*

█ Defendant Bavaro pled guilty to violating 18 U.S.C. § 371 by conspiring to deprive Thomas Pizzuto of his right to be free from cruel and usual punishment. (Pl.Stmt, ¶ 31.) The factual basis for Bavaro's plea was the admission that:

> On January 8, 1999, I joined Edward Velazquez and Patrick Regnier on the D–Block tier and stood in front of Thomas Pizzuto's cell while Officers Velazquez and Regnier were inside the cell beating him. I stood in front of the cell throughout the beating in order to assist Officers Velazquez and Regnier by making sure that Mr. Pizzuto did not fight back or try to leave the cell. By standing in front of the cell I also intended to discourage other inmates on the tier from later telling anyone what they saw or heard during the beating.

(*Id.* ¶ 6.) Bavaro further testified at his deposition that when Velazquez told him that they were going "to pay [Thomas Pizzuto] a visit," he understood that the officers were going to use physical force against him. (*Id.* ¶ 7.)

█ The elements of a criminal conspiracy under § 371 are identical to those of a civil conspiracy under § 1983. *Compare Old Security Life*, 740 F.2d at 1397, *with U.S. v. Jobe*, 101 F.3d 1046 (5th Cir.1996). Accordingly, I find that Bavaro's criminal conviction conclusively establishes his civil liability for conspiring to deprive Pizzuto of his Eighth Amendment right to be free from cruel and unusual punishment as an incarcerated inmate. Summary judgment

is therefore granted against defendant Bavaro with respect to Count I.

### 3. Bergen

■ A jury convicted Bergen for being an accessory after the fact to the conspiracy, and also for the substantive crime of depriving Pizzuto of his right to be free from cruel and unusual punishment in violation of 18 U.S.C. §§ 241 and 242. (Pl. Stmt., ¶ 38.) For the same reasons set out in relation to Velazquez and Regnier, I find that Bergen is also liable as a matter of law with respect to Count I.

### B. Count III: Deprivation of Rights Under the Eighth Amendment

■ Defendants Velazquez and Regnier pled guilty to depriving Pizzuto of his Eighth Amendment right to be free from cruel and unusual punishment. For the same reasons stated in relation to Plaintiff's conspiracy claims, I find that Velazquez and Regnier are estopped from disputing their civil liability for their battery of Thomas Pizzuto. Summary judgment is therefore granted against Velazquez and Regnier with respect to Count III.

### C. Count IV: Failure to Protect Under the Eighth Amendment

■ Plaintiff asserts that defendant Bavaro is liable as a matter of law under the Eighth Amendment for exhibiting deliberate indifference to a substantial risk of serious harm to Pizzuto during his battery.

■ It is well established that "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan,* 511 U.S. 825, 828, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). To establish deliberate indifference under the Eighth Amendment, a plaintiff must show "something more than mere negligence; but proof of intent is not required, for the deliberate-indifference standard is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) (internal quotations omitted).

As stated above, Bavaro has testified and does not now dispute that he knew in advance that Velazquez and Regnier planned to use excessive force against Pizzuto. (Pl.Stmt., ¶ 7.) In addition, Bavaro accompanied Velazquez and Regnier to Pizzuto's cell, and watched Velazquez and Regnier viciously beat Pizzuto for approximately one minute. (*Id.* ¶ 6.) He did not intercede on behalf of Pizzuto and in fact admitted that his presence was intended both to ensure that Pizzuto did not fight back and to keep other inmates on the tier from interfering. (*Id.* ¶ 9.) As these facts are undisputed, I find that Bavaro's conduct demonstrated as a matter of law a "deliberate indifference to a substantial risk of serious harm" to Thomas Pizzuto in violation of Pizzuto's rights under the Eighth Amendment right. I therefore grant summary judgment against Bavaro with respect to Count IV.

### D. Count VI: Deliberate Indifference to Serious Medical Needs

■ Plaintiff claims that the undisputed facts demonstrate that Velazquez, Regnier, Bavaro and Pincus failed to seek immediate medical treatment for Pizzuto and are therefore liable under the Eighth Amendment for the "unnecessary and wanton infliction of pain" upon an inmate.

The United States Supreme Court has held that "[d]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain ... proscribed by the Eighth Amendment." *Estelle v. Gamble,* 429 U.S. 97,

104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quotation marks omitted); *see also, Kaminsky v. Rosenblum,* 929 F.2d 922, 926 (2d Cir.1991) (cruel and unusual punishment may consist of prison officials delaying an inmate access to needed medical care).

Defendants Velazquez and Regnier brutally beat Pizzuto and left him moaning in his cell. Thereafter, they decided not to file an accident report and further advised their supervisor, Gary Pincus, that no such report was needed. (Pl.Stmt., ¶ 11.) The effect of these actions was to preclude Pizzuto from receiving immediate medical attention. Although Pizzuto was sent to the Medical Unit later in the day by defendant Bergen, this was done despite the efforts of Velazquez, Regnier and Bavaro. It is therefore clear that Defendants were indifferent to Pizzuto's medical needs.

Moreover, having battered Pizzuto in a manner sufficient to kill him, Velazquez and Regnier should have been aware of the seriousness of Pizzuto's medical needs. Indeed, the severity of his injuries were manifest by visible bruises on his back and face. (Pl.Stmt, ¶ 12.) Bavaro, having witnessed the beating first hand, should have likewise known of the seriousness of Pizzuto's injuries. I therefore grant summary judgment against Velazquez, Regnier and Bavaro with respect to Count VI.

Unlike the other defendants, Pincus did not take part or witness the beating of Thomas Pizzuto. This lack of personal knowledge as to the severity of Pizzuto's beating precludes the court from granting summary judgment against Pincus. There exists a remote possibility that a jury might still find that Pincus did not know that Pizzuto had "serious medical needs" as a result of the beating, despite the screams, moans, and other noises emanating from his cell.

**E. Count VIII: Supervisory Liability**

Plaintiff claims that Pincus is liable under the Eighth Amendment for his own personal involvement as a supervisor in the beating of Thomas Pizzuto and for his subsequent failure to provide Pizzuto with medical care. She further claims that Pincus is liable for the acts of his subordinates in depriving Pizzuto of his constitutional rights.

*1. Personal Involvement*

Supervisory officials are liable for constitutional violations where they were personally involved in such violations. *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997); *see also, Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). To establish personal involvement, a plaintiff must demonstrate that a supervisor "directly participated in the violation" or "failed to remedy the violation after learning of it." *See Sealey,* 116 F.3d at 51; *see also, Provost v. City of Newburgh,* 262 F.3d 146, 155 (2d Cir.2001) (supervisory liability exists for "a person who, with knowledge of the illegality, participates in bringing about a violation of the victim's rights but does so in a manner that might be said to be indirect—such as ordering or helping others to do the unlawful acts, rather than doing them him—or herself").

I have already found that Bavaro, Velazquez and Regnier deprived Pizzuto of his Eighth Amendment right to be free from cruel and unusual punishment as an incarcerated inmate. It is also undisputed that Pincus directly participated in these acts by instructing Bavaro, Velazquez and Regnier to control Pizzuto's behavior through the use of force if necessary, and by opening the cell door for the three officers and thereby allowing them to enter Pizzuto's cell. (Pl. Stmt, ¶ 2, Ex C.) I therefore enter summary judgment against Pincus with respect to Count VIII.

## 2. Acts of Subordinates

■ Supervisory liability may be imposed "when an official has actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act." *Meriwether v. Coughlin,* 879 F.2d 1037, 1048 (2d Cir.1989).

It is undisputed that Pincus instructed his subordinates to control Pizzuto by force if necessary. From his vantage point at the lock box some forty feet away, Pincus saw Velazquez and Regnier enter Pizzuto's cell, and heard "banging" and "thuds" coming from Pizzuto's cell during the beating. (Pl. Stmt, Ex. D at 75.) He also felt vibrations from the beating and heard Pizzuto moaning and crying. (*Id.* at 81, 85.) Pincus testified that he believed Velazquez and Regnier were using excessive force against Pizzuto and inflicting physical injury upon Pizzuto. (*Id.* at 78, 86.) He also testified that he did not act to stop the beating. (*Id.* at 84.) Finally, Pincus acceded to the Velazquez's suggestion that no injury report be filed and failed to immediately check Pizzuto's medical condition following the beating. (*Id.* at 86.) I find that this course of conduct constitutes, at minimum, gross negligence in violation of Pincus' duty to protect inmates from foreseeable risks of harm. This conduct thus provides an independent basis for granting summary judgment against Pincus with respect to Count VIII.

## III. State Law Claims

### A. Count XI: Liability for Battery Under New York State Law

■ In their plea allocutions, Velazquez and Regnier both admitted to battering Thomas Pizzuto without justification. These admissions conclusively establish unconsented bodily contact and thus the tort of battery. *McMillan v. Williams,* 116 Misc.2d 171, 455 N.Y.S.2d

523 (Sup.Ct.1982). Summary judgment is therefore granted against Velazquez and Regnier with respect to Count XI.

### B. Count X: Supervisory Liability Under New York State Law

■ Plaintiff claims that Pincus is liable for negligent supervision under New York state law. As a correction officer employed by the NCCC, defendant Pincus owed Pizzuto a duty of reasonable care. In the prison context, this duty is to "protect [ ] inmates from foreseeable risks of harm." *Colon v. State,* 209 A.D.2d 842, 843, 620 N.Y.S.2d 1015 (3d Dep't 1994). Thus, "whether a breach of duty has occurred depends upon whether the resulting harm was a reasonably foreseeable consequence of the defendant's acts or omissions." *Gordon v. City of New York,* 70 N.Y.2d 839, 841, 523 N.Y.S.2d 445, 517 N.E.2d 1331 (1987).

■ Although gross negligence is usually a matter for the jury, it may in certain circumstances be found as a matter of law. *See, e.g., In re Hubbell's Will,* 302 N.Y. 246, 258–59, 97 N.E.2d 888 (1951) (holding trustees guilty of gross negligence as a matter of law in failing to take any steps toward converting corpus of trust into income producing assets within five years of deceased's death).

In light of the facts set out in relation to Plaintiff's federal law claim for supervisory liability, I find that defendant Pincus was, as a matter of law, grossly negligent in failing to perform his duty to protect Pizzuto from foreseeable harm. Summary judgment is therefore granted against Pincus with respect to Count X.

### C. Count XVII: Nassau County's Respondeat Superior Liability

Plaintiff asserts that the individual defendants' tortious acts against Thomas

Pizzuto under Counts X and XI were committed while working within the scope of their employment and that Nassau County is therefore liable for these acts as a matter of law under the doctrine of *responde-at superior*. Defendant Nassau County responds that the individual defendants' actions cannot be deemed to have been committed within the scope of their employment because they were taken for wholly personal reasons and because they constituted gross violations of NCCC regulations.

Employers are liable for their employees' actions where such actions are undertaken at the "explicit direction of the employer," *Schiraldi v. AMPCO System Parking,* 9 F.Supp.2d 213, 219 (W.D.N.Y. 1998), or where the employees' actions were a foreseeable, ordinary, and natural incident or attribute of their employment. *See Riviello v. Waldron,* 47 N.Y.2d 297, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (1979); *Helbig v. City of New York,* 212 A.D.2d 506, 622 N.Y.S.2d 316 (2d Dep't 1995). The "employer need not have foreseen the precise act or the exact manner of the injury as long as the general type of conduct may have been reasonably expected." *Riviello,* 47 N.Y.2d at 304, 418 N.Y.S.2d 300, 391 N.E.2d 1278. Moreover, so long as the act is foreseeable, *Riviello* provides that:

> an employer [will not be] excused merely because his employees, acting in furtherance of his interests, exhibit human failings and perform negligently or otherwise than in an authorized manner. Instead, the test has come to be "whether the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions."

*Id.* at 302, 418 N.Y.S.2d 300, 391 N.E.2d 1278.

Where the element of general foreseeability exists, even intentional tort situations have been found to fall within the scope of employment. *See Riviello,* 47 N.Y.2d at 305, 418 N.Y.S.2d 300, 391 N.E.2d 1278. However, "[a]n employer will not be held liable under this doctrine for actions which were not taken in furtherance of the employer's interests and which were undertaken by the employee for wholly personal motives." *Galvani v. Nassau County Police Indemnification Review Bd.,* 242 A.D.2d 64, 68, 674 N.Y.S.2d 690 (2d Dep't 1998); *see also, Davis v. City of New York,* 226 A.D.2d 271, 641 N.Y.S.2d 275 (1st Dep't 1996) ("an employee's actions are not within the scope of employment unless the purpose in performing such actions is to further the employer's interest, or to carry out duties incumbent upon the employee in furthering the employer's business. Thus, where an employee's conduct is brought on by a matter wholly personal in nature, the source of which is not job related, his actions cannot be said to fall within the scope of his employment.").

In determining whether an employee's tortious acts have been committed within the scope of his or her employment, the court weighs the following factors: "the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated." *Riviello,* 47 N.Y.2d at 303, 418 N.Y.S.2d 300, 391 N.E.2d 1278. This determination is heavily dependent on factual considerations and is therefore ordinarily a question for the jury. *See Rounds v. Delaware Lackawanna & Western R.R. Co.,*

64 N.Y. 129, 137–38, 1876 WL 12108 (1876). However, where, as here, there is no conflicting evidence as to the essential facts, a court may make this determination as a matter of law. *See Cepeda v. Coughlin,* 128 A.D.2d 995, 513 N.Y.S.2d 528 (3d Dep't 1987).

In the case at bar, the court finds as a matter of law that Velazquez, Regnier and Pincus were acting within the scope of their employment—and not for "wholly personal motives" when they violated Thomas Pizzuto's Eighth Amendment rights, and that the County of Nassau is therefore vicariously liable for these acts under the doctrine of *respondeat superior.*

*1. Count XI: Velazquez and Regnier*

■ Defendants Velazquez and Regnier's liability under the Eighth Amendment arises from their decision to use force against Pizzuto for the dual purpose of quieting him down and reprimanding him for his failure to obey an order. Velazquez and Regnier stated in their plea allocutions that they had initially anticipated silencing Pizzuto by yelling at him through the bars of his cell. However, as soon as they arrived at Pizzuto's cell, Pincus opened the cell door. As a result, Velazquez and Regnier entered Pizzuto's cell, and shouted at Pizzuto to shut up. When Pizzuto persisted in his yelling, the two officers beat him for approximately one minute, all the while ordering him to cease yelling.

Analyzing these acts under *Riviello* and its progeny, it is clear that Velazquez and Regnier were acting within the scope of their employment. First, there is an undisputed "connection between the time, place and occasion for the act," as Defendants were on duty within their assigned work area.

Second, Defendants were clearly "carry[ing] out duties incumbent upon [them] in furthering [their] employer's business." *Davis,* 226 A.D.2d at 271, 641 N.Y.S.2d 275. The record contains uncontraverted evidence that Defendants were charged with the duty of keeping order on the Observation Tier, and acted in furtherance of this responsibility when they beat Pizzuto. In this respect, both defendants testified that they agreed to confront Pizzuto in order to quiet him down. (Pl.Stmt, Ex. C, Ex. E.) Velazquez testified that he told Pizzuto to stop yelling when he entered Pizzuto's cell, and only struck Pizzuto when it became clear that Pizzuto would continue his yelling. (*Id.,* Ex. C.) Moreover, both Velazquez and Regnier testified that they continued telling Pizzuto to stop his yelling throughout the duration of his beating. (*Id.,* Ex. C, Ex. E.) Pincus also testified that he dispatched Velazquez and Regnier to Pizzuto's cell for the dual purpose of quieting Pizzuto and reprimanding him for failing to follow instructions. (*Id.,* Ex. D, at 64–65.)

These admissions were made both at the individual defendants' civil depositions and as part of their guilty pleas in the prior criminal proceedings. Judge Mishler found that the admissions were credible, and I find no evidence in the record to suggest otherwise. Indeed, Nassau County's claim that Velazquez and Regnier had personal motives for battering Pizzuto and therefore were not acting within the scope of their employment is wholly unsupported by the record.[1]

*Riviello* also counsels courts to consider "the history of the relationship between

---

**1.** Because the record contains no evidence substantiating the claim that Velazquez and Regnier bore personal malice against Pizzuto, I find that *Vargas v. Correa,* 416 F.Supp. 266 (S.D.N.Y.1976), which involved a wholly personal dispute over television viewing preferences, is inapposite.

employer and employee as spelled out in actual practice" and "whether the act is one commonly done by such an employee." 47 N.Y.2d at 303, 418 N.Y.S.2d 300, 391 N.E.2d 1278. It is undisputed that the NCCC afforded the defendants significant discretion in controlling the behavior of difficult inmates and that the defendants commonly exercised this discretion through the use of limited force. Indeed, the defendant officers were trained and authorized to use physical force in further-ance of legitimate penalogical interests. (Pl.Stmt, Exs.K, I, J, L.) [2]

I also find that it is eminently foresee-able that in the course of performing their duties, corrections officers may use exces-sive force to control a difficult inmate. This is particularly true where, as here, a cell door is unexpectedly opened and the officers, who are authorized to use physical force when necessary, come face to face with an inmate.

Finally, while officers Velazquez and Regnier may have departed from the nor-mal method of silencing a difficult inmate, I find that their departure from NCCC regulations is not so substantial as to out-weigh the other *Riviello* factors, especially where their acts were taken in a misguided attempt to further the NCCC's legitimate penalogical interest in maintaining order. *See Riviello*, 47 N.Y.2d at 302, 418 N.Y.S.2d 300, 391 N.E.2d 1278 ("[T]he test has come to be 'whether the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions.'"); *see also De Wald v. Seidenberg*, 297 N.Y. 335, 79 N.E.2d 430 (1948) ("The master who puts the servant in a place of trust or responsi-bility, or commits to him the management of his business or the care of his property, is justly held responsible when the serv-ant, through lack of judgment or discre-tion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes be-yond the strict line of his duty or authori-ty, and inflicts an unjustifiable injury upon another.").

In making this finding, I note that NCCC policy and practice may very well have permitted a limited use of force in controlling Pizzuto's behavior. As set out above, NCCC training materials specifical-ly state that correctional officers are au-thorized to use force "to accomplish ... legitimate purposes related to security, or-der or control." (Pl.Stmt, Ex. K.) Thus, the "extent of [Defendants'] departure from normal methods of performance" should be measured by considering the difference between the force that may have properly been used to silence Pizzuto and the excessive force that Defendants actually used against Pizzuto. If Defen-dants had intended to murder Thomas Piz-zuto, their departure from normal proce-dure may well have been great enough to take their acts outside the scope of their employment. However, the evidence shows that Velazquez and Regnier did not immediately or even intentionally kill Piz-zuto. Rather, they inflicted upon him a one-minute beating that had the tragic re-sult, unbeknownst to anyone at the time, of lacerating Pizzuto's spleen. Such acts, while barbaric, do not represent such a great departure from the roughhewn reali-ty of a correction officer's daily routine as to fall outside of the scope of Defendants' employment.

---

**2.** NCCC training materials specifically state that: "Sooner or later, a jail officer may have to use force to accomplish a legitimate correc-tional objective. No one disputes that force sometimes has to be used in jails .... correc-tional officers have a 'privilege' to use force in order to accomplish legitimate enforcement and correctional objectives. In jail, these ob-jectives include: ... [t]o prevent or stop an inmate disturbance ... to accomplish other legitimate purposes related to security, order or control." (Pl.Stmt, Ex. K.)

Accordingly, I find that the record contains overwhelming and uncontroverted evidence that Velazquez and Regnier were "doing their master's work," and doing it poorly, when they used physical force to silence Thomas Pizzuto and reprimand him for his failure to obey an order. As Defendants, after extensive discovery, have failed to provide even a shred of evidence to the contrary, I hold that the County of Nassau is, as a matter of law, vicariously liable for Velazquez and Regnier's battery of Thomas Pizzuto as to Count XI.

### 2. Count X: Pincus

Pincus' supervisory liability under Count X arose from his decision (1) to instruct Velazquez, Regnier and Bavaro to control Pizzuto's behavior, (2) to open the cell door for purposes of allowing the officers to enter Pizzuto's cell, and (3) to allow Velazquez and Regnier to continue beating Pizzuto once he believed that the two officers were using excessive force.[3]

Pincus made these decisions while on duty and in furtherance of his responsibilities as a supervisor, which include maintaining order on his cell block, supervising subordinates, and protecting inmates from foreseeable risks of harm. Moreover, these decisions were foreseeable and do not represent such a great departure from normal methods of performance as to outweigh the other factors outlined in *Riviello*.

Accordingly, I find that the County of Nassau is vicariously liable for Pincus' supervisory liability as established with respect to Count X of Plaintiff's complaint.

### IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is GRANT-

ED on Count I against defendants Velazquez, Regnier, Bavaro and Bergen. Summary judgment is GRANTED against defendants Velazquez and Regnier with respect to Counts III and XI, against defendant Bavaro with respect to Count IV, against defendants Velazquez, Regnier and Bavaro with respect to Count VI, against defendant Pincus with respect to Counts VIII and X. In addition, I GRANT summary judgment against defendant County of Nassau on the issue of its vicarious liability for those acts taken in relation to Counts X and XI. Plaintiff's motion for summary judgment against defendant Pincus is DENIED with respect to Count VI.

SO ORDERED.

---

**3.** While Pincus also failed to file an accident report and conduct a reasonable investigation into Pizzuto's beating—two omissions that may have arisen from a personal interest in initiating a cover-up—these failures were not essential to my finding that he was liable under Count X.