Ana ASTO, Plaintiff,

v.

John MIRANDONA; "John Doe Number 1," first and last names fictitious and unknown; "John Doe Number 2," first and last names fictitious and unknown, Defendants.

No. 03CV760SLTRLM.

United States District Court,
E.D. New York.

March 29, 2005.

Denis McAllister, Williston Park, NY, for Plaintiff.

Dione M. Enea, Steven J. Kim, United States Attorney's Office, Eastern District of New York, Brooklyn, NY, for Defendants.

## MEMORANDUM AND ORDER

TOWNES, District Judge.

Defendant moves for summary judgment on Plaintiff's defamation claim. Upon consideration of the written submissions of each party and oral argument on January 28, 2005, and for the reasons set forth below, Defendant's motion is GRANTED.

### BACKGROUND

This action arises out of a defamation suit brought by Ana Asto ("Asto" or "Plaintiff") against John Mirandona ("Mirandona") and other unnamed defendants in New York State Supreme Court based on events occurring at John F. Kennedy International Airport ("JFK") on January 28–29, 2002.

Mirandona is the Port Director at JFK for the United States Customs and Border Protection division of the Department of Homeland Security, formerly the Immigration and Naturalization Service ("INS"). As Port Director, Mirandona is responsible for the inspection and admission of all foreign passengers traveling through JFK. In January 2002, Mirandona supervised approximately 500 INS employees and contract security officers from Wackenhut Correction Facility ("Wackenhut") who worked in the Federal Inspection Service ("FIS") area at JFK. At the time of the events giving rise to this suit, Plaintiff was a Wackenhut employee stationed in the FIS in the Secondary Inspections area ("Secondary"). Plaintiff was usually partnered with fellow Wackenhut employee Thomas Kavanaugh ("Kavanaugh") on her duties.

In response to complaints from detained aliens at JFK that personal items had been stolen from their luggage during their inspections, the Office of the Inspector General within the U.S. Department of Justice ("OIG") conducted an undercover operation on January 28, 2002. Due to the fact that the complainants were detained while Plaintiff and Kavanaugh were on duty, and because Plaintiff was specifically named by one of the complainants, the OIG conducted its undercover operation while Plaintiff and Kavanaugh were working. During the operation, in which an undercover agent posed as a detainee, Kavanaugh was observed entering the baggage room and opening the agent's luggage. Ultraviolet dye that had been on the money planted in the agent's luggage was also found on Kavanaugh's hands. Plaintiff was not observed engaging in any improper behavior, though there is some dispute as to whether she lied to the OIG

agent about Kavanaugh's whereabouts in order to keep him from getting into trouble.

At some point in January 2002, Mirandona learned that Plaintiff was the target of an OIG investigation into the complaints about items having been stolen from detainees' luggage. On January 29, 2002, after arriving at JFK, Mirandona was shown the video surveillance of Kavanaugh taking money from the agent's bag and then returning it to the bag. Mirandona instructed Kavanaugh and Plaintiff to leave the FIS area, at which point the following exchange took place:

> Mirandona to Kavanaugh: "I don't want you here. I don't want [Plaintiff] here either."
>
> Kavanaugh to Mirandona: "Let [Plaintiff] work in the house. [Plaintiff] did not have nothing [sic] to do with this."
>
> Mirandona to Kavanaugh: "That's not up to me. That's up to Regis [1]."
>
> Mirandona to Pilliggi [2]: "Take [Kavanaugh's] ID and take [Plaintiff's] too. Escort them out."
>
> Pilliggi to Mirandona: "I already took [Kavanaugh's]."
>
> Kavanaugh: "Ok."
>
> Plaintiff to Pilliggi: "This is very injustice [sic], sir, I didn't do anything."
>
> Kavanaugh to Pilliggi: "I know when John calms down he will realize that [Plaintiff] had nothing to do with this."

In a letter dated January 29, 2002, the United States Customs Service ("USCS") Director for the JFK port of entry, Susan Mitchell ("Mitchell"), revoked Plaintiff's access to the FIS, stating:

Pursuant to 19 C.F.R. § 122.187, the U.S. Customs Service may revoke access to the Customs Security Area (i.e., Federal Inspection Sites) from airport employees if the employee is convicted of a felony or if the continuation of privileges is deemed to "endanger the revenue or security of the area."

A recent investigation revealed information about you which triggers the use of the above provision. As a result, your access to the Customs Security Area is hereby revoked. Specifically, on January 29, 2002, while working at Terminal 4 you were observed, while under surveillance, pilfering items from the baggage of an individual under the custody of the Immigration and Naturalization Service.

Pursuant to 19 C.F.R. § 122.187(b), your access to U.S. Customs Security areas is permanently revoked.

Plaintiff appealed the decision of the USCS, and in a March 5, 2002 letter Mitchell granted the appeal and reinstated Plaintiff's access to the Customs Security Area at JFK, noting that her access had previously been revoked "pursuant to derogatory information received from the Department of Justice, Office of the Inspector General concerning her involvement in an investigation conducted by them." On April 16, 2002, Plaintiff's employer, Wackenhut Correctional Center, sent her a letter stating "[d]ue to an investigation, which is still ongoing, we have been instructed as per the Immigration and Naturalization Service to remove you from the INS contract effective April 25, 2002."

---

1. This is apparently a reference to Theresa Regis, whom Mirandona described as "a contracting officer from the Wackenhut contract." (Mirandona Depo. at 41.)

2. Assistant Port Director Rich Pilliggi. (Mirandona Depo. at 32.)

On January 22, 2003, Plaintiff brought a defamation suit against Mirandona and other unnamed defendants alleging that "on or about January 29, 2002, at John F. Kennedy International Airport, Defendant JOHN MIRANDONA, acting in his position as Assistant Area Port Director did maliciously speak of the Plaintiff, in the presence of other employees of the Immigration & Naturalization Service that she (Plaintiff) 'pilfered items from the luggage of an individual' under the custody of the Immigration & Naturalization Service." (Compl.¶ 16.) The action was removed to this Court on February 14, 2003, following certification by the United States Attorney that Mirandona was acting within the scope of his employment at the time of the events alleged in the complaint and that the United States was the proper party defendant. Following indication by the Government that it intended to move to dismiss Plaintiff's claims for lack of subject matter jurisdiction, Plaintiff challenged the Government's certification that Mirandona was acting within the scope of his employment and stated her need to depose Mirandona on this issue. On July 30, 2003, Judge Garaufis permitted the parties limited discovery on the scope-of-employment issue and depositions were subsequently taken of both Plaintiff and Mirandona.

## DISCUSSION

### I. Standard of Review

■ The Government has styled its motion as one for summary judgment. However, the Rule 56 standards do not apply to a motion such as this one, which presents no potential jury issues and which does not necessitate a determination on the merits of Plaintiff's defamation claim. This is essentially a jurisdictional motion which calls for the Court to conduct a two-step inquiry into (1) whether the United States was properly substituted as the party defendant pursuant to the Government's certification that the individual defendant was acting within the scope of his employment and (2) whether this Court has subject matter jurisdiction over the resulting action against the United States.

### II. Substitution of the United States as Defendant

■ Pursuant to the Westfall Act, 28 U.S.C. § 2679(d), the Government seeks to have this Court uphold its substitution of the United States for Mirandona as the party defendant. The Westfall Act provides, in pertinent part:

Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1). Upon proper certification, "the employee is dismissed from the action and the United States is substituted as defendant. The case then falls under the governance of the Federal Tort Claims Act." *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 420, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995).

■ Special Assistant U.S. Attorney Dione M. Enea has certified that Mirandona was acting within the scope of his employment at the time of the incidents alleged in the complaint. When a plaintiff challenges a scope-of-employment certification, a district court reviews the certification *de novo*. *Bello v. United States*, 93 Fed.Appx. 288, 289 (2d Cir.2004); *McHugh v. Univ. of Vermont*, 966 F.2d 67, 72 (2d Cir.1992). In conducting its review, the court applies state law principles per-

taining to when intentional tortious conduct falls within the scope of a party's employment. *See McHugh,* 966 F.2d at 75; *Bello,* 93 Fed.Appx. at 289. The court must view the tortious conduct in the light most favorable to plaintiff, meaning that "the government may not deny that acts were within the scope of employment by denying that the acts occurred." *McHugh,* 966 F.2d at 74. However, the court may make its own findings of fact with respect to the "context of the alleged acts that is relevant to the scope of employment issue" and, in so doing, may rely on evidence outside the pleadings and conduct an evidentiary hearing when necessary. *Id.; Bello,* 93 Fed.Appx. at 289–90.

■■■ New York law holds that an employee's tortious acts fall within the scope of his employment if "done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions." *Pizzuto v. County of Nassau,* 239 F.Supp.2d 301, 313 (E.D.N.Y. 2003) (Garaufis, J.) (quoting *Riviello v. Waldron,* 47 N.Y.2d 297, 418 N.Y.S.2d 300, 391 N.E.2d 1278, 1281 (1979)) (internal quotation marks omitted). The following factors have been weighed by courts in making such a determination: (1) whether the time, place and occasion for the act was connected to the employment; (2) the history of the employer-employee relationship in actual practice; (3) whether the act is one commonly done by such an employee; (4) the extent to which the act departs from normal methods of performance; and (5) whether the act was one that the employer could reasonably have anticipated. *Bello,* 93 Fed.Appx. at 289 (citing *Riviello,* 418 N.Y.S.2d 300, 391 N.E.2d at 1281); *Pizzuto,* 239 F.Supp.2d at 313.

Applying the preceding principles to the facts of this case, the evidence in the record leaves little doubt that if Mirandona made the allegedly defamatory statements complained of by Plaintiff, he did so in the scope of his employment. While Plaintiff alleged in her Complaint that Mirandona accused her of "pilfering" items from the luggage of detainees on the morning of January 29, 2002 in the context of the conversation among herself, Mirandona, Kavanaugh, and Assistant Port Director Pilleggi, she later admitted in her deposition testimony that Mirandona made no such statement on that occasion. (Pl. Depo. at 23, 26–27.) Plaintiff did testify that Mirandona said (1) he wanted her and Kavanaugh both gone, (2) that Plaintiff and Kavanaugh had been working together for a long time, and (3) that he did not want to hear anything from Plaintiff. (Pl. Depo. at 16–18, 26–27.) Such statements, if made, were made by Mirandona while he was performing his duties as Port Director in supervising contract employees like Plaintiff. This conversation took place immediately after ˙Mirandona had seen the videotape of Kavanaugh going through the undercover agent's luggage and handling the money planted there and indicates Mirandona's determination that, based on the results of the undercover operation, Plaintiff and Kavanaugh should no longer be given access to the secured inspection area, a determination that was within Mirandona's authority to make. (Mirandona Depo. at 15.)

■■■ Plaintiff, reluctant to abandon the "pilfering" allegation entirely, also argues in her brief that Mirandona must ˙have, at some point, told Mitchell or told someone who told Mitchell that Plaintiff had been observed "pilfering" items· from detainee's luggage because that was what Mitchell accused her of in the letter and only Mirandona could have been the source of that allegedly defamatory information. (Pl. Mem. at 5–6, 10–12.) Notwithstanding the dubious logic of this argument, Plaintiff testified in her deposition that, apart from

what Mirandona said to her in the course of the conversation discussed above, he made no other allegedly defamatory comments. (Pl. Depo. at 23.) However, even if Mirandona did tell Mitchell or someone who relayed the information to Mitchell that Plaintiff had "pilfered" objects from the detainees' baggage, any such statement would still have been within the scope of Mirandona's employment, as it would have been related to the undercover investigation of an employee under Mirandona's supervision and would have been relevant to Mirandona's determination as to whether Plaintiff should continue to have access to the secured area. Furthermore, it is certainly forseeable that Mirandona, in responding to the problem created by the stolen items, would have to make statements concerning his perception of the likely culpability of the suspects under investigation. Even if the statements reflected an incorrect assessment of Plaintiff's involvement, that would not place the statements outside the scope of his employment, as under New York law an employee's actions need only be generally foreseeable to the employer to fall within the scope of employment. *See Bello,* 93 Fed.Appx. at 290 (citing *Riviello v. Waldron,* 47 N.Y.2d 297, 418 N.Y.S.2d 300, 391 N.E.2d 1278, 1281 (1979)).

■■■ Plaintiff argues that Mirandona's statements were outside the scope of his employment because they were made with personal animus: "We submit that, upon information and belief, on or about January 28, 2002, Defendant John Mirandona spoke maliciously of the Plaintiff when he communicated to the Area Director of the USCS Susan Mitchell, or some third party that the Plaintiff was observed pilfering the items of personal property of a detainee." (Pl. Mem. at 10.) (emphasis added.) New York law holds that a defendant "does not act within the

scope of his employment when he engages in tortious conduct for personal reasons separate and distinct from the interests of his employer." *Bello,* 93 Fed.Appx. at 291; *Pizzuto,* 239 F.Supp.2d at 313 ("[A]n employer will not be held liable under this doctrine for actions which were not taken in furtherance of the employer's interests and which were taken by the employee for wholly personal motives.") (quoting *Galvani v. Nassau County Police Indemnification Review Bd.,* 242 A.D.2d 64, 674 N.Y.S.2d 690, 693–94 (2d Dep't 1998)).

Plaintiff's evidence that Mirandona possessed some personal motive causing him to maliciously defame Plaintiff is her wholly conclusory argument that Mirandona's "demeanor" during the course of the January 29, 2002 conversation at the airport "is emblematic of someone acting with malice." (Pl. Mem. at 13.) Plaintiff argues that the alleged exchange, in which Mirandona both said that Plaintiff was implicated in the thefts because she had worked with Kavanaugh for a long time and refused to listen to her protestations of innocence, "demonstrates that despite being advised by the OIG criminal investigators that the Plaintiff was not observed attempting to pilfer any luggage, Defendant Mirandona still wanted her FBI access revoked regardless of the exculpatory evidence." *Id.* However, not only do the referenced statements and actions by Mirandona fail to demonstrate any personal motivation on his part, Plaintiff's own deposition testimony serves once again to negate any inference that could possibly be raised. Plaintiff testified that she had no personal contact with Mirandona except for a brief greeting at Christmas, that she never reported to Mirandona, and that she had no reason to believe that any of the statements made by Mirandona in the conversation referenced above were motivated by personal reasons. (Pl. Depo. at 15, 42.) Thus, there is simply nothing in the record to indicate that Mirandona acted out of

personal motives or malice in making any statements about Plaintiff.

 Finally, Plaintiff states that she needs further discovery in order to properly oppose the Government's motion. Specifically, Plaintiff argues that she has been allowed to conduct only very limited pretrial discovery and that further discovery "is needed to secure the appropriate documentation from the defendant as well as take the necessary depositions of the officials who would have knowledge of how it came to be that Plaintiff had her access to the FIS revoked and how it is that the Area Director for the USCS was informed that Plaintiff 'was observed, while under surveillance, pilfering the baggage of items from the luggage of an individual under the custody of the Immigration and Naturalization Service.'" (Pl. Mem. at 6, quoting incorrectly from Mitchell's January 29, 2002 letter.) Despite Plaintiff's protestations, she has been provided with the requisite opportunity to obtain discovery as to the narrow question at issue: whether Mirandona was acting within the scope of his employment when he uttered the allegedly defamatory statements.

At Plaintiff's request, Judge Garaufis permitted her to depose Mirandona on the scope of employment issue. Plaintiff never asked to depose any other party or to have the Court conduct an evidentiary hearing on the scope of employment issue. In fact, Plaintiff's counsel stated in a letter to the Court that permitting her to take Mirandona's deposition would "eradicate any opposition to the Government's dismissal motion." (Letter to J. Garaufis dated July 3, 2003.) During Mirandona's deposition, Plaintiff's counsel questioned him extensively about his job duties, his motives in revoking Plaintiff's access to the work area, statements he made to and about Plaintiff, and specifically whether he made any comments about Plaintiff having "pilfered" items from the baggage of detainees to anyone at the Customs Service or anywhere else. While it is true that counsel for the Government strenuously objected to portions of Plaintiff's questioning, in the end Mirandona answered every question posed to him by Plaintiff except for whether he delegated any of his duties to subordinates, which Magistrate Judge Mann ruled was irrelevant to the scope of employment issue. (Mirandona Depo. at 60–61.) The Government is quite justified in arguing that if Plaintiff was dissatisfied with the testimony she obtained from Mirandona or felt that it raised questions necessitating further discovery, then she should have raised the issue in October 2003, when Mirandona was deposed, instead of waiting until motion papers were filed in May 2004. Further, Plaintiff has neglected to set forth the names of any particular individuals she wishes to depose or the source of her "knowledge and belief" that their answers would be any different than those given by Mirandona. It seems that Plaintiff, having not obtained the answers she wanted from Mirandona, now wishes to go on a fishing expedition to see if she can obtain better answers elsewhere. However, even if there were witnesses or documents in existence somewhere that could answer the questions of (1) how Plaintiff's access to the FIS came to be revoked and (2) how Mitchell came to believe that Plaintiff had been observed "pilfering" items from the baggage of detainees, such evidence would be irrelevant to the question of whether Mirandona was acting in the scope of his employment. That is, even if Mirandona said everything that Plaintiff has alleged, both parties have testified that Mirandona did not act out of personal motives and Plaintiff has not argued that further discovery would change that fact. Without some present or potential evidence of malice, there is no plausible reason to hold that Mirandona's alleged defamatory statements were made outside the scope of his employment.

As a final note, it is interesting that before Plaintiff decided to challenge the Government's certification, she appeared to readily admit that Mirandona was acting within the scope of his employment: "On or about January 29, 2002, at John F. Kennedy International Airport, Defendant JOHN MIRANDONA, **acting in his position as Assistant Area Port Director**, did speak of the Plaintiff the following false and defamatory words..." (Compl.¶ 17.) (emphasis added.) Thus, it is unclear that Plaintiff was even entitled to discovery on this issue in the first place. She is certainly not entitled to more.

As the record clearly indicates that any allegedly defamatory statements made by Mirandona were made within the scope of his employment with a federal agency, the certification by the United States Attorney must be upheld, and the United States is properly substituted as the party defendant.

## III. Subject Matter Jurisdiction

. The Federal Tort Claims Act, 28 U.S.C. §§ 2671 et. seq. ("FTCA"), provides the exclusive remedy for a plaintiff who seeks to recover for the negligent or wrongful acts or omissions of federal employees acting within the scope of their employment. *See* 28 U.S.C. § 2679(b)(1); *see also Castro v. United States,* 34 F.3d 106, 110 (2d Cir.1994). The FTCA provides that, upon certification, removal and substitution, an action "shall proceed in the same manner as any action against the United States filed pursuant to Section 1346(b) of this title and shall be subject to the limitations and exceptions applicable to those [FTCA] actions." 28 U.S.C. § 2679(d)(4) (citations omitted). One such applicable exception expressly bars suits for money damages against the United States based on a claim for slander. 28 U.S.C. § 2680(h); *Devlin v. United States,* 352 F.3d 525, 536 (2d Cir.2003); *Tomscha v. Greenberg,* 2004 WL 1878749, *4, 2004 U.S. Dist. LEXIS 16676, at *11 (S.D.N.Y. Aug. 20, 2004). Thus, this Court does not have subject matter jurisdiction over Plaintiff's defamation claim.[3] The Court further lacks subject matter jurisdiction over the claim due to Plaintiff's conceded failure to exhaust her administrative remedies as required by the FTCA. 28 U.S.C. § 2675(a)[4]; *McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."); *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir.1994) ("Because [plaintiff] failed to first present his claim to the appropriate agency, the district court properly dismissed his tort claims for want of subject matter jurisdiction."); *Gerry v. Behr,* 1998 WL 782015, at *4, 1998 U.S. Dist. LEXIS 17761, at *11–12 (E.D.N.Y. Nov. 6, 1998) (Gleeson, J.) ("The Federal Tort Claims Act requires that a claimant against the federal government file an administrative claim with the appropriate agency prior to institution of suit.") (quoting *Keene Corp. v. United*

---

**3.** Plaintiff's counsel acknowledged in a July 18, 2003 letter to the Court that, under the FTCA, the United States has retained sovereign immunity from claims involving defamation of character. (Letter to J. Garaufis dated July 18, 2003.)

**4.** Section 2675(a) provides that "[a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."

*States,* 700 F.2d 836, 840 (2d Cir.1983)); Pl. Mem. at 7 ("The Plaintiff concedes that she has not exhausted administrative remedies in order to proceed against the United States under the Federal Tort Claims Act.").

*CONCLUSION*

Because defendant Mirandona was acting within the scope of his employment at the time he allegedly uttered defamatory remarks about Plaintiff, the Government's certification is upheld, the United States is hereby substituted as defendant, and the claims against Mirandona are dismissed. Further, because the FTCA bars defamation claims for money damages against the United States and because Plaintiff has failed to exhaust her administrative remedies as required by the statute, this Court lacks subject matter jurisdiction over Plaintiff's claim and the action is dismissed in its entirety.[5]

**SO ORDERED.**

***

5. To the extent that Plaintiff's claims against the unnamed "John Doe" defendants are still pending, they are hereby dismissed for failure to serve the unnamed defendants with the summons and complaint. Fed. Rule Civ. P. 4(m).